J-S28018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: D.S.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| APPEAL OF: D.B.B., FATHER | |
| | No. 65 MDA 2015 |

Appeal from the Decree entered November 17, 2014,
in the Court of Common Pleas of Lancaster County,
Orphans' Court, at No(s): 1648-2012

BEFORE: BOWES, ALLEN, and LAZARUS, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JUNE 15, 2015**

D.B.B. ("Father") appeals from the decree involuntarily terminating his parental rights to his daughter, D.S.B. ("child"), born in July of 2005.[1] We affirm.

In its opinion, the trial court set forth forty-four findings of fact, which the testimonial and documentary evidence supports. As such, we adopt them as the factual and procedural history of this case. **See** Trial Court Opinion, 2/5/15, at 5-11.

On August 2, 2012, the Lancaster County Children and Youth Social Service Agency ("CYS") filed a petition for the involuntary termination of Father's parental rights. The trial court held a hearing on the petition on

---

[1] D.S.B.'s mother has consented to the child's adoption and is not involved in this appeal.

November 6, 2014, at which Father and CYS caseworker Scott Kearse testified.

By decree dated November 17, 2014, the trial court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (2). Father filed a notice of appeal on January 7, 2015.[2] On January 14, 2015, Father filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On February 5, 2015, the trial court entered an opinion pursuant to Pa.R.A.P. 1925(a).

Father raises two issues for our review:

_____

[2] Pursuant to Pa.R.A.P. 903(a), a notice of appeal must be filed within 30 days after the entry of the order from which the appeal is taken. Here, the notice of appeal was filed 52 days after the entry of the order terminating Father's parental rights.

Our review of the trial court docket sheet indicates, however, that on December 4, 2014, the decree of termination that had been mailed to Father was returned to the Lancaster County Clerk of Courts as undeliverable. The decree was re-sent to Father on December 16, 2014 at the correct address.

This Court has previously held that "[p]ursuant to Pa.R.App.P. 108(b), the 'date of entry' of an order in a civil matter is the day on which notation is made in the docket that notice of the order has been given, as required by Pa.R.C.P. 236(b)." *Estate of Keefauver*, 359 Pa. Super. 336, 338, 518 A.2d 1263, 1264 (1986). Thus, in *Keefauver*, we reasoned that where the docket did not indicate that the appellant received proper notice of the Orphans' Court decree, the period for taking an appeal pursuant to Pa.R.A.P. 903(a) was never triggered and therefore the appellant had not waived his right to appeal for failure to file within 30 days. Here, the thirty-day filing requirement was not triggered until December 16, 2014, when the decree of termination was sent to Father at the correct address. Father was therefore required to file his notice of appeal before January 15, 2015. Consequently, Father's notice of appeal filed on January 7, 2015 is timely.

1. WHETHER THE AGENCY MET ITS BURDEN IN TERMINATING APPELLANT'S PARENTAL RIGHTS UNDER 23 Pa.C.S. SECTIONS 2511(a)(5) and (8) WHEN THE CHILD WAS NOT REMOVED FROM HIS CUSTODY.[3]

2. WHETHER THE AGENCY MET ITS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT EVIDENCED A SETTLED PURPOSE OF RELINQUISHING PARENTAL CLAIM TO HIS DAUGHTER.

Father's Brief at 6.

We review Father's issues regarding the involuntary termination of parental rights according to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [____ Pa. ____, ____, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [____ Pa. ____], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

---

[3] Although Father contends that the Agency failed to satisfy 23 Pa.C.S. sections 2511(a)(5) and (8), our review indicates that the trial court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S.A § 2511(a)(1) and (2). **See** Decree, 11/17/14. Nevertheless, the trial court in its Pa.R.A.P. 1925(a) opinion addressed Father's claims that the Agency failed to satisfy the requirements of § 2511(a)(5) and (8), in addition to the requirements of (1) and (2). **See** Trial Court Opinion, 2/5/15, at 11-12.

As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing

evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the relevant provisions of the Adoption Act are as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1),(2), (b).

We note that we must agree with only one subsection of 23 Pa.C.S.A. § 2511(a), in addition to subsection 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

With respect to Section 2511(a)(1), our Supreme Court has held,

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 550 Pa. 595, 602, 708 A.2d 88, 92 (Pa. 1998). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

To terminate parental rights pursuant to Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse,

neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.*

With respect to Section 2511(b), we have explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Upon review, we conclude that the record evidence unequivocally supports the trial court's termination of Father's parental rights with respect to 23 Pa.C.S.A. § 2511(a)(1) and (2) and (b).

For example, CYS Caseworker Scott Kearse testified that Father "reported" that he assisted in the child's care until December of 2010, when he moved out the home.  N.T., 11/6/14, at 13.  Thereafter, the child was in the care of her mother, until the Agency obtained physical custody of the child in March of 2011, and legal custody of the child in May of 2011, after which Father had such little contact with the Agency that aggravated circumstances were found against Father on March 22, 2012.  *Id*. at 14-15, 20.  Father was ultimately located by the Agency at the Quehanna Boot Camp in September 2014, where he had been incarcerated since January 16, 2014.  *Id*. at 14-15, 26.  He never gave Mr. Kearse an explanation for failing to make contact with CYS or his child for approximately three and a half years.  *Id*. at 17-18.  Mr. Kearse testified that termination was in the child's best interest, so that she can achieve stability and be adopted by the permanent placement where she has lived for the past two years.  *Id*. at 17-19.  The child has no independent recollection of Father.  *Id*. at 26.

Father explained his failure to keep in contact with CYS and the child as follows:

> That's why I was worried about – I was – just lost my mom at the same time and everything else.  I'm an only child.  I was going through my own things and me being selfish, I screwed up, but I'm here, you know, I can't do nothing about that but try to do the best thing I can right now.

*Id*. at 38.

Father continued:

And like I told you, I went through – I was going through my own problems right at the time. I, you know, my mom dying and everything else, I had to pay for that. And you know, my mom was going through dementia. I had to take care of her and everything else.

So I, you know, that was – I forgot about – I know that was my priority, my other priority, but I had a lot on my plate for one person, and I thought [child] was better at that time in a better place. I couldn't do nothing for her at that time.

*Id*. at 42.

Father testified to having a history of medical, legal, drug and alcohol, and mental health issues, but averred that although he arrived at the boot camp with "an attitude and some problems … from the street," he was successfully participating in a drug and alcohol program and planned to graduate from the program and move to a halfway house, and wished to resume a parenting relationship with child. *Id*. at 42-45.

Based on the foregoing, we discern no abuse of discretion by the trial court in terminating Father's parental rights. *See In re A.L.D., supra* (parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities). Accordingly, we adopt the trial court's February 5, 2015 opinion as dispositive of Father's issues on appeal. *See* Trial Court Opinion, 2/5/15. Father is directed to attach a redacted copy[4] of the trial court's opinion in the event of further proceedings.

_____

[4] The copy shall redact on page 1 the names of Father and D.S.B.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                          :
                                :
                                :     No. 1648 of 2012
                                :
INVOLUNTARY TERMINATION         :

## OPINION *SUR* APPEAL

This opinion is written in response to an appeal from this Court's issuance of a decree which involuntarily terminated the parental rights of                    as birth parent of

        (hereinafter referred to as "D.S.B." or as the "Child").

The Lancaster County Children and Youth Social Service Agency (hereinafter, the "Agency") filed a Petition to Terminate Parental Rights on August 2, 2012.

Service of the Petition to Terminate Parental Rights was attempted upon                    (hereinafter, "Father") on several occasions over a two-week period commencing on August 21, 2012. His whereabouts were unknown. His location was established in August 2014. He participated at the first termination of parental rights hearing on August 14, 2014, which was continued at his request to be represented by counsel. He was personally served on October 7, 2014, with the notice of the Termination Hearing scheduled for November 6, 2014. He participated by telephone at the hearing on November 6, 2014, and was represented by court-appointed counsel.

The biological mother of D.S.B. is a/k/a (hereinafter, "Mother"). She executed a consent for the Child to be adopted on November 6, 2014. A Decree was issued on January 13, 2015, confirming her consent for the child to be adopted. Mother is not a party to this appeal.

A hearing to address the issue of whether Father's parental rights should be terminated was held on November 6, 2014.

The Court's decree terminating Father's parental rights was signed on November 17, 2014. The Decree was sent to Father at Quehanna Boot Camp, 4510 Quehanna Highway, Karthaus, Pennsylvania 16845. However, it was returned to the Clerk of the Orphans' Court because Father's inmate number was not indicated on the envelope. The Decree was sent again to Father with his inmate number. Upon Father receiving the Decree, his counsel filed a timely Notice of Appeal on January 7, 2015.

## PROCEDURAL HISTORY

The Agency originally filed for custody of the Child on March 15, 2011. At that time, the Child was in the custody of Mother. The Agency had concerns in respect to Mother's failure to supervise the Child, her lack of housing, and her mental health. The petition alleged that Father is a drug addict and that he had minimal involvement with the Child. A Shelter Care Order was entered March 17, 2011, which granted temporary legal and physical custody of the Child to the Agency. Father was

-2-

present at the hearing and was represented by counsel. After April 25, 2011, the Agency had no contact with Father. He attended no other hearings relative to the dependency proceedings. His first and last parent-child visit was March 28, 2011. (See Agency's Petition for Permanency Hearing filed February 20, 2014.)

An Adjudication/Disposition hearing was held on May 12, 2011. An Order of Adjudication and Disposition-Child Dependent was issued on that same date. The Court approved a Child's Permanency Plan prepared on April 5, 2011, which specified a primary goal of reunification and a concurrent goal of adoption.

The sole objective for Father as outlined in the initial Child's Permanency Plan was that Father participate in and complete a drug and alcohol evaluation by an approved Agency provider. Father failed to obtain this evaluation. In the event that Father has obtained the drug and alcohol evaluation, there would have been other objectives set for him, including his compliance with recommendations of the drug and alcohol evaluation, his completion of an Agency-approved parenting program, his procurement of safe and stable housing, his procurement of a consistent source of income, and his maintenance of positive and appropriate interaction with the Child during scheduled visits. Because the initial evaluation was never done,

-3-

18

Father never moved forward to address and complete has any of his objectives.

In its Petition to Terminate Parental Rights, the Agency alleged as the bases for termination that:

A. The parents, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, either have evidenced a settled purpose of relinquishing parental claim to the child or have refused or failed to perform parental duties. (Section 2511 (a) (1)).

B. The repeated and continued incapacity, abuse, neglect, or refusal of the parents has caused the child to be without essential parental care, control, or subsistence necessary for his physical and mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parents. (Section 2511 (a) (2)).

C. The child has been removed from the care of the parents by the Court for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parents cannot or will not remedy these conditions within a reasonable period of time, the services or assistance reasonably available to the parents are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental

-4-

19

rights would best serve the needs and welfare of the child. (Section 2511 (a) (5)).

D. The child has been removed from the care of the parents by the Court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. (Section 2511 (a)(8)).

## FINDINGS OF FACT

### Background Facts

1. D.S.B. was born July 16, 2005, in York County, Pennsylvania. (Petition to Terminate Parental Rights)

2. D.S.B. has been in the physical custody of the Agency since March 15, 2011. (N.T. 11/6/14 at page 11)

3. D.S.B. has been in the legal custody of the Agency since May 12, 2011. (N.T. 11/6/14 at page 12)

4. At the time of the termination of parental rights hearing on November 6, 2014, the Child had been in the care of the Agency for forty-three months. (N.T. 11/6/14 at page 48)

5. Father has been residing with the Child's paternal grandmother and the Child prior to the Child being placed. (N.T. 11/6/14 at page 13)

6. Father moved out of paternal grandmother's home in December 2010. (N.T. 11/6/14 at page 13)

7. At that time, the Agency had received reports that Father was a drug addict and unable to properly care for the Child. (N.T. 11/6/14 at page 13)

8. Prior to the Child being placed, Father had given the Child to Mother. (N.T. 11/6/14 at page 28)

9. At the time of the Child's placement in March 2011, the Child was in the care of Mother. (N.T. 11/6/14 at page 20)

**Dependency Proceedings**

10. When the Child was found to be dependent on May 12, 2011, the Court had ordered the Agency to accomplish an assessment of Father to determine what services would be necessary to determine if he could care for his Child and if reunification was possible. (N.T. 11/6/14 at pages 13-14)

11. Father attended the shelter care hearing on March 17, 2011, but he attended or participated in no other hearings thereafter until the termination of parental rights hearing on November 6, 2014, more than three years and seven months later. (N.T. 11/6/14 at page 14)

12. Father had one visit with the Child after she was placed. Father canceled the second scheduled visit. (N.T. 11/6/14 at pages 30-31)

-6-

13. After he canceled his second scheduled visit with the Child, Father did not contact the Agency to request visits with the Child until February 2012. (N.T. 11/6/14 at page 25 and pages 32-33)

14. Father attempted to visit the Child sometime in February 2012, but his right to visit had been suspended by the Court by Order dated August 8, 2011, due to his failure to maintain contact. (N.T. 11/6/14 at pages 32-33)

15. Parents are informed when a dependency action originates that they must notify the Agency within twenty-four hours if their address should change. (N.T. 11/6/14 at page 25)

16. Father moved from an address on Judie Lane in Lancaster Township during May 2011 and lived with his mother and aunt for about a month. (N.T. 11/6/14 at page 39)

17. Father then moved his residence to 557 High Street in Lancaster City. (N.T. 11/6/14 at page 39)

18. Father then left the High Street address and moved to 227 West Vine Street in Lancaster City, where he remained until his incarceration in January, 2014. (N.T. 11/6/14 at page 39)

19. Father never contacted the Agency to inform them of his address as it changed from time to time. (N.T. 11/6/14 at page 25)

20. Despite the fact that Father lived in Lancaster Township or Lancaster City from May 2011 until January 2014,

Father never bothered to go to the Agency to inquire about the case or the Child, although he knew where the Agency was located. (N.T. 11/6/14 at page 37)

21. Aggravated circumstances were found to exist with regard to Father on March 22, 2012, due to his failure to have any contact with the Agency for a period in excess of six months. (N.T. 11/6/14 at pages 25-26)

**Termination of Parental Rights Hearing**

22. The Agency did not know Father's whereabouts from after the shelter care hearing until August 2014. (N.T. 11/6/14 at pages 21-22)

23. The Agency conducted a search to locate Father. (N.T. 11/6/14 at page 22)

24. The Agency located Father at the Quehanna Boot Camp in August-September 2014. (N.T. 11/6/14 at pages 14-15)

25. From the time the Child came into the care of the Agency until after he was served with the Agency's petition for termination of his parental rights, Father had no contact with the Agency and had only one visit with the Child, which occurred shortly after the Child was placed. (N.T. 11/6/14 at page 17)

26. When the Agency caseworker met with Father in September 2014, Father provided no explanation as to why he had not maintained contact with the Agency or with the Child. (N.T. 11/6/14 at pages 17-18)

-8-

23

27. Father is presently incarcerated after he was convicted by guilty plea of manufacturing, delivery and possession with intent to deliver drugs, of criminal use of a communication facility, and of conspiracy to manufacture, deliver or possess drugs and drug paraphernalia. (N.T. 11/6/14 at page 35)

28. Father's past criminal history includes two felony convictions in addition to the aforementioned crimes. (N.T. 11/6/14 at page 36)

29. Father was incarcerated at Camp Hill State Correctional Institution from January 16, 2014, until his transfer to Quehanna Boot Camp. (11/6/14 at page 36)

30. Father has been incarcerated at the Quehanna Boot Camp since May 29, 2014. (N.T. 11/6/14 at page 36)

31. During the termination of parental rights hearing on November 6, 2014, Father stated that he should be released from Quehanna Boot Camp in about a month or two. (N.T. 11/6/14 at page 44)

32. Father expected to be moved to York, Pennsylvania, upon his release from Quehanna Boot Camp, where he will then spend approximately four months in a half-way house. (N.T. 11/6/14 at page 45)

33. Father acknowledged that he cannot do anything for the Child while he is incarcerated and that the Child was in the best place she could be. (N.T. 11/6/14 at page 46)



34. After his first and only visit with the Child (which occurred soon after the Child was placed), Father did not attempt to visit the Child at the Agency because he "just did not do it." (N.T. 11/6/14 at pages 40-41)

35. Father excuses his lack of contact with the Agency and his failure to visit with the Child on the basis that he had "a lot on his plate" and he could not do anything for the Child at that time. (N.T. 11/6/14 at page 42)

36. Father also thought that Mother was doing everything necessary to have the Child returned to her. (N.T. 11/6/14 at pages 37-38)

37. Father acknowledged having an addiction to pain pills. (N.T. 11/6/14 at pages 42-43)

38. Father receives disability for depression and being bipolar. (N.T. 11/6/14 at page 43)

39. Father's older children live in York, Pennsylvania.

40. Father believes that his older children will help him raise the Child. (N.T. 11/6/14 at page 45)

**Best Interest of the Child**

41. The Child has been in the same resource home for two years.

42. The home where the Child is placed is a potential permanent resource home for her. (N.T. 11/6/14 at page 18)

43. It is in the Child's best interest to be adopted and have a permanent home. (N.T. 11/6/14 at page 19)

44. The Child has no independent recollection of who her father is. (N.T. 11/6/14 at page 26)

## CONCLUSIONS OF LAW

1. There is clear and convincing evidence that:

Father for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to said Child or has refused to perform parental duties.

2. There is clear and convincing evidence that:

(a) the repeated and continued incapacity of Father has caused the Child to be without essential parental care, control or subsistence necessary for his physical or mental well-being;

(b) the conditions and causes of the incapacity cannot or will not be remedied by Father.

3. There is clear and convincing evidence that:

(a) the Child has been removed from the care of Father for a period of at least six months;

(b) the conditions which led to the removal of the Child continue to exist;

-11-

(c) Father cannot or will not remedy these conditions within a reasonable period of time;

(d) the services or assistance reasonably available to Father is not likely to remedy the conditions which led to the removal of the Child within a reasonable period of time; and

(e) termination of Father's parental rights would best serve the needs and welfare of the Child.

4. There is clear and convincing evidence that:

(a) the Child has been removed from the care of his parents by the Court;

(b) twelve months or more had elapsed from the date of removal;

(c) the conditions which led to the removal of the Child continue to exist; and,

(d) termination of Father's parental rights would best serve the needs and welfare of the Child.

5. There is clear and convincing evidence that the termination of Father's parental rights will best serve the developmental, physical, and emotional needs and welfare of the Child because the Child is in need of a nurturing, loving and a stable home environment, which Father failed to provide.

## DISCUSSION

The Superior Court, in its opinion issued in the case of *In Re K.M.*, 2012 Pa.Super. 160, 53 A.3d 781, provided a

-12-



comprehensive statement of its approach to the review of an order

terminating parental rights, which is in accordance with the

following standards:

> "When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
> In re R.N.J., 985 A.2d 273, 276 (Pa.Super. 2009) (quoting In re S.H., 879 A.2d 802, 805 (Pa.Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. Id. Moreover, we have explained that:
> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." Id. (quoting In re J.L.C. & J.R.C., 837 A.2d 1247, 1251 (Pa.Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. In re M.G., 855 A.2d 68, 73-74 (Pa.Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support an opposite result. In re Adoption of T.B.B., 835 A.2d 387, 394 (Pa.Super. 2003). This Court may affirm the trial court's termination of parental rights with regard to any one subsection of section § 2511 (a). See In re B.L.W., 843 A.2d 380, 384 (Pa.Super.2004) (en banc)."
> Id., at 53 A.3d 785-786.

In the present case, the Agency filed for termination on

four distinct statutory grounds, all of which were proven as to



Father by clear and convincing evidence. Specifically, the Agency met its burden in respect to proving grounds for the termination of Father's parental rights under 23 Pa.C.S.A. § 2511 (a) (1), (2), (5), and (8).

**Grounds for Termination under 23 Pa. C.S.A. § 2511 (a) (1)**

The Agency met its burden of proof in respect to 23 Pa.C.S.A. § 2511 (a) (1), where the basis for termination may be summarized as parental abandonment of a child. Mother had custody of the Child immediately preceding the Child's placement. Father was not involved in parenting the Child at that time. Father appeared at the shelter care hearing and had one visit with the Child. He was apprised of the Child's placement in the Agency's care, he knew where the Agency was located, and, until January 2014, he lived close-by to the Agency's offices. Yet, other than the one contact he made in February 2012 to attempt to arrange a visit, Father initiated no contact with the Agency, nor did he inform the Agency of his address as he moved from place to place. The evidence is overwhelming that Father willingly and knowingly has abandoned the right to parent this Child.

**Grounds for Termination under 23 Pa.C.S.A. § 2511 (a) (2)**

The basis for termination of parental rights under 23 Pa.C.S.A. § 2511 (a) (2) is, in summary, the incapacity of, or refusal by, the parent to correct the conditions which led to the placement.

-14-

29

The Child had been in the care of the Agency for forty-three months as of the time of the termination hearing on November 6, 2014. Father did nothing to attempt to correct the conditions that led to placement of the Child. Father managed one visit with the Child shortly after placement. By Father's own account, he was residing in Lancaster Township and City, nearby to the Agency, from approximately May 2011 until January 2014. He made one feeble attempt to see the Child after his first and only visit, and that came almost a year after the Child entered care. Father offered no sufficient explanation for his failure to be a parent. Father had more than adequate time to obtain the drug and alcohol evaluation required in the Child's Permanency Plan as a precursor to other potential services that the Agency might then have offered to him. Rather than take any initiative whatsoever, Father sat reticent in the belief that Mother would pursue her Child's Permanency Plan objectives and be reunited with the Child, thereby opening an opportunity for Father to be reunited with the Child without any effort expended on his part. Father's gamble on Mother proved to be misplaced.

The Agency has proven by clear and convincing evidence that the Child has been without essential parental care, control or subsistence necessary for his physical or mental well-being. Father is unable to remedy the conditions and causes of his inability to provide for the Child's needs.

30

## Grounds for Termination under 23 Pa.C.S.A. § 2511 (a) (5)

The hallmarks of grounds for termination of parental rights under 23 Pa.C.S.A. § 2511 (a) (5) are that the subject child has been in placement for at least six months, the conditions which led to placement continue to exist, that offered services are unlikely to alleviate such conditions within a reasonable time, and the subject child's needs and welfare are best served by termination.

Father chose to avoid contact with the Agency, thereby rendering it impossible for the Agency to offer him services which would have facilitated Father's reunification with the Child. Given Father's lack of commitment as evidenced by his past actions, the conditions which led to placement most likely will continue to exist. The only time Father had custody of the Child was when Father lived with the Child's mother. Father has never exercised independent responsibility as a parent to the Child.

Father did not take the first step needed to remedy the conditions which led to the Child's placement as pertain to him. Because of Father's failure to obtain a drug and alcohol assessment, Father frustrated any attempt by the Agency to identify other issues and assist in remedying same. Father must bear the fault for the fact that the conditions which led to placement have not been addressed or rectified.

-16-

All of the factors discussed above in respect to 23 Pa.C.S.A. § 2511 (a) (2) are applicable under 23 Pa.C.S.A. § 2511 (a) (5), and will not be repeated at length.

The additional factor the Court must determine under 23 Pa.C.S.A. § 2511 (a) (5) is whether "termination of parental rights would best serve the needs and welfare of the child." This factor is essentially subsumed in the Court's consideration of the application of 23 Pa. C.S.A. § 2511 (b), which is discussed below.

## Grounds for Termination under 23 Pa.C.S.A. § 2511 (a) (8)

The grounds for termination of parental rights under 23 Pa.C.S.A. § 2511 (a) (8) are similar to the grounds established under 23 Pa.C.S.A. § 2511 (a) (5). However, under subsection (a) (8), the Agency need not prove incapacity or refusal by the parent, nor need it prove the absence of a likelihood that the services or assistance reasonably available to the parents will prove successful. Rather, the emphasis moves to the length of the lapse of time (from six months to twelve months), requiring that if the conditions which led to placement persist one year or more after placement, then termination should occur unless the needs and welfare of the subject child suggest a contrary result.

In the instant case, to reiterate, the Child had been in placement for forty-three months as of the November 6, 2014, termination of parental rights hearing. Thus, the twelve months

-17-

32.

Court must assess the effect upon the child of severing that bond. *See In re KCR-S.*, 958 A.2d 529, 533 (Pa.Super. 2008).

Instantly, the Child does not know Father. *Finding of Fact 44.* There simply can be no bond where a parent is not in a child's life for a period exceeding forty-three months. The Child last saw Father when she was approximately five and a half years old. She is now nine years of age. The Child deserves permanency. That will be accomplished by terminating Father's parental rights, thereby clearing the way for her adoption to be concluded.

The Federal Adoption and Safe Families Act (found at 42 U.S.C. §§ 620 through 679) requires that a child must achieve permanency within a reasonable period of time.

> Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act, which was amended in 1998 to conform to the Federal Adoption and Safe Families Act (ASFA)...The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments... place the focus of dependency proceedings, including change of goal proceedings on the child. Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of parents. *In re N.C.*, 909 A. 2d 818, 823 (Pa. Super. 2006)

The record in this case is replete with evidence which clearly and convincingly establishes that the Child's interests are best served by the termination of Father's parental rights.

-19-

34

## CONCLUSION

The issues raised by Father in his Notice of Appeal lack merit. The Decree dated November 17, 2014, terminating Father's parental rights in respect to D.S.B. should be affirmed.

BY THE COURT:

JEFFREY J. REICH, JUDGE

Dated: February 5, 2015

Attest: _Cindy R. Rowe_

DEPUTY CLERK-CCD

Copies to:

Daniel H. Shertzer, Jr., Esquire
43 North Lime Street
Lancaster PA 17602

    Counsel for Father

JoAnne Murphy, Esquire
P.O. Box 547
Maytown PA 17550

    Guardian *ad litem*

David J. Natan, Esquire
Lancaster County Children and Youth Social Service Agency
53 North Duke Street
Lancaster PA 17602

    Counsel for the Agency

35